Could we again ask all counsel to keep their voices up? The microphone is not for amplification. It's for recording purposes. Thank you. Good morning, Your Honors. May it please the Court, Marty Myers from Heller-Ehrman, representing Appellant Sony Computer Entertainment America. Subject, of course, to the Court's questions, I'll first address why there is coverage under the AIG-AISLIC Multimedia Insurance Policy, then why there's coverage under the AIG-American Home General Liability Policy, and I will attempt to reserve a few minutes for closing. As to AIG-AISLIC, there are two primary issues. First, the construction of the phrase negligent publication and whether that phrase includes the allegations in the Kim and Cain underlying lawsuits. If Sony is correct that negligent publication includes the allegations in Kim and Cain, the Court must reverse and remand. Negligent publication, that phrase has a plain meaning. The communication to the public lacking due care or concern. Counsel, you've relied on dictionaries for that, and this term doesn't appear to be a term of art. It's not clear that this has got routine usage in insurance, and it's not a term that comes out of torts. And so we've got a phrase here for which you've argued plain meaning because there doesn't appear to be any other accepted meaning. Well, Your Honor, we argue plain meaning because we believe it's the correct meaning. You are absolutely right. There are no judicial, uniform judicial constructions. The term does not have a special or technical meaning. The phrase is not ambiguous. Nobody claims any of those things. And under the rules of construction where the words have a plain and ordinary meaning in the absence of ambiguities or special usage, et cetera, that plain meaning must control. Yes, we do use dictionaries, and that is, according to the California courts, a fundamental way to reflect the common and ordinary and popular sense in which words are used. And under the rules of construction, that plain meaning must apply here. There is no ambiguity, and there is no special or technical meaning. In fact, the district court's narrow construction of the term, which was that category of tort claims typified by defamation or misappropriation, cannot be the meaning of negligent publication in this policy for several reasons. First, defamation and misappropriation are separately covered under different provisions of the policy. Explicitly, under Wrongful Act A and Wrongful Act C, that simply cannot be the controlling definition. And, Your Honors, the court below arrived at that narrow construction, ignoring not ignoring but not applying the plain meaning through context and circumstances. Context and circumstances come into play, Your Honors, where there's an ambiguity or a special technical meaning, which nobody contends here that there is. And if you examine the district court's use of context and circumstances, it simply does not hold up as defining the phrase negligent publication. It's based in significant part on inadmissible testimony from a broker, allegedly undisputed testimony where the broker and an affiliate said, we didn't think there was coverage. Well, the broker later changed his mind and said, you know, after looking at this and talking with people, I think there is coverage. That method should not have been used at all to construe negligent publication under the rules of construction. But even if you go there, the district court erred by so applying it. ASLIC's proposed construction of negligent publication also is inconsistent with all of the rules which Your Honor asked about. It's inconsistent with the plain meaning. It is inconsistent with the ordinary and popular sense of the words used. In fact, ASLIC has admitted, and the district court agrees, there is no uniform judicial construction of negligent publication. All of the arrows point back to the plain meaning, and that is what SCEA submits must govern. The second issue, Your Honor, in the ASLIC multimedia policy is whether a coverage provision which states plainly that ASLIC will defend suits alleging false advertising or misrepresentation in advertising must be enforced despite the fact that it appears in an exclusion. If SCEA is correct on this issue, ASLIC had a duty to defend, and this Court should reverse, direct the trial court to enter partial summary judgment on SCEA's partial summary judgment motion as to the duty to defend and remand for further proceedings. Counsel, looking at Exclusion P. Yes, Your Honor. The suits that Sony faces allege false advertising or misrepresentation in advertising, as I understand. Is that correct? Correct. Okay. Now, so let's assume that you are covered under the general coverage provision because these are negligent publications. Yes, Your Honor. Exclusion P then accepts from that coverage false advertising or misrepresentation. So Sony then would have no coverage for claims of false advertising or misrepresentation. However, ASLIC would have a duty to defend Sony in those actions. So the duty to defend would be separate as a result of Exclusion P, even though there wouldn't be any coverage for any recovery. Not exactly, Your Honor, if I may. Okay. This policy, the only place the duty to defend appears in the entire ASLIC policy is in Exclusion P. That's part of the point here. There is a duty to reimburse some defense fees and costs, which is different under the rules from a traditional duty to defend. The Exclusion P, presuming SCEA is correct, negligent publication includes false advertising, which we do believe is the case. False advertising and misrepresentation in advertising is excluded by Exclusion P, except that there is a duty to defend suits in which those claims are alleged. The claimants in Kim and Cain allege misrepresentations in advertising by SCEA and misrepresentations outside of advertising, Your Honor. They allege that there are misrepresentations in correspondence, in consumer service phone calls, and in other contexts. So, Your Honors, even if the indemnity for false advertising and misrepresentation in advertising is excluded by Exclusion P, liability, indemnity coverage for misrepresentations not in advertising still exists. And SCEA has to be defended in the suit which alleges false advertising and misrepresentation. Counsel, if the Kim plaintiffs were only alleging false advertising and misrepresentation in advertising, then where would Sony be? The ACLIC would have a duty to defend, but they can recoup their expenses from Sony, is that what happens? Absolutely right, Your Honor. They have to front the money for the defense, and then you have to, then Sony has to cough it up at the end. Correct. That really wouldn't do you much good, would it? Well, it might or might not, given how these things tend to operate. So Sony would still like to have ACLIC defend them up front? Well, in point of fact, Your Honor, it's only, I believe, if it's proved that SCEA does ultimately commit false advertising or misrepresentation in advertising, is that that's the circumstance in which they could be recoverable. And typically, these cases don't get to a trial where that's ultimately determined. So you're suggesting that if that ACLIC would have a duty to defend you, and let's suppose that you prevailed on that point in Kim, then there's no right to recoup, is that correct? Correct. If it's solely on that cause of action. If there are misrepresentations outside of advertising, then we do, and there's defense allocable in part to those actions. Right. But your claims about misrepresentation outside of advertising is a claim that those So we're talking about two different things. One is whether they've got a duty to compensate, is to cover any recovery by the Kim plaintiffs. And the other is whether they have a duty to defend you against their claims. Correct. And, Your Honors, what the district court did, which was erroneous, was to say, well, there's a general rule that exclusions don't create coverage. Therefore, the district court did not analyze the language of exclusion P, which the court was just focused on, but said in light of that general rule, there cannot be defense for these claims. AZLIC has argued, well, that's true because an exclusion, which has an exception, can only carve back coverage, which the insuring agreement originally gave. Well, if that's true, we have coverage anyway because false advertising and misrepresentation in advertising are a subspecies of negligent publication. So you have to read the two. You're asking us to read the two together rather than. Absolutely, Your Honor. I don't have a problem with that. What is, help me if I should know this, but what is the status of the underlying litigation? Yes, Your Honor. Those cases have settled. They have been fully and finally settled. All settlement benefits have been distributed. It is in the record. The settlement agreement, which is relevant on a couple of points, is in the record. At the time it was subject to final approval. I believe that has since occurred, but that fact is not in the record. All of the cases on which the district court. But you have no reason to believe that the settlement isn't going through. It has gone through. It has gone through.  They are resolved, Your Honor. And that goes to Judge Bybee's point in part that, you know, is there a right to come back after SCEA for some of the defense? Since the cases have settled, that would have to be determined in a separate trial post-remand as to whether or not the trial within a trial, essentially, on whether those claims were made and could have been proved. The final point I want to make on the defense provision is, Your Honors, it is plain and unambiguous. The district court did not construe it simply because of this general rule. That general rule is based on a line of cases concerning alleged ambiguities, alleged ambiguities between an exception to an exclusion and an insuring agreement, et cetera. SCEA does not rely on such ambiguity. This is a plain and clear coverage provision. And the California Supreme Court recently held in the TRB investments case, which we submitted as a Rule 28J letter, that a coverage provision can appear in an exclusion. And the courts have long held that it is the function of the language and the construction of the language which controls not where it's placed in the policy. SCEA was entitled to at least defense under Exclusion P. And we believe SCEA is entitled to indemnification based on the plain meaning of negligent publication. I'd like to turn briefly to the American Home general liability policy from AIG and the issues there. Your Honors, the district court erred by requiring SCEA to show that a specific claim for damages was stated in the Kim and Cain complaints to trigger the duty to defend. That was error. The district court's approach, urged on the Court by American Home here, cannot be reconciled with the fundamental standard of the duty to defend. That is, that there's a duty to defend if, based on the facts pledged and the extrinsic evidence, it is possible that the insured could be liable for covered damages. I stopped on the phrase there, based on the facts pled. There are numerous facts pled in the Kim and Cain cases showing SCEA's potential liability for the loss of use of property. That is, the PlayStation 2 game discs. These are repeated in several places throughout the record. The, quote, inability to read Blue Bottom CD games, quote, inability to read DVDs, quote, inability to read original PlayStation games. The duty to defend standard turns on the facts pled, not on whether a specific claim for damages is made. In fact, the California courts have specifically rejected American Home's position that a specific theory or claim of damages must be made. That's in the Charles Thomas v. Transamerica case. Rather, coverage turns on the facts pled and whether, based on those facts, it is demonstrated that there is potential liability for covered damages. Tell us, counsel, how we get loss of use or physical injury here. Your Honor, all that is required is loss of use of tangible property. The tangible property at issue are discs, media. Those under California law, the Ward General case from the Fourth District Court of Appeal and the Schaefer-Karpf case from the Second District Court of Appeal, those media do constitute tangible property. Right. But if you can take it and go put it on a different machine and play it, then what's the problem? The whole point, Your Honor, is it is the PlayStation 2 user who can play that game disc only on a PlayStation 2. One cannot take a PlayStation 2 game disc and put it into a DVD player and start playing it. We made this point in the record. Mr. Kincaid's declaration talks about the fact that the media is specifically designed for use on the PS2. There was some confusion in the trial court on this issue as well. Some of the media which was the loss of use was alleged are plain old DVDs, movie DVDs, et cetera. And sure, those might be playable on another player. But a significant proportion, and there's no evidence in the record as to what proportion, is PS2, PlayStation 2 games which are designed to be played exclusively on the PlayStation 2. If your PlayStation 2 is defective, you can't play that disc. And that is the loss of use, Your Honor. And that's exactly what is alleged, primarily in the Kim case, but also in the Kane case. Your Honors, there's a final point I'd like to make. That gives you general? That gives you what? That shows that there is property damage, Your Honor. Property damage includes two parts. One is physical injury to tangible property. We don't allege physical injury to tangible property in the form of discs was alleged in Kim and Kane. Physical injury to the PlayStation units was. They alleged that there was banging and clicking noises, et cetera. And that's important and relevant to an exception to an exclusion on the American Home Policy, specifically the impaired property exclusion. SCEA believes we have shown and satisfied the standard that it is possible that there was a physical injury to the PS2 console, which is what caused. And that physical injury was sudden and accidental. That's the banging and clicking noise, the immediate freezing, locking, and skipping, which the plaintiffs note. And that caused the loss of use of the PlayStation discs. But most of what we have focused on, Your Honor, is the second prong of the property damage definition, prong one being physical injury, prong two, loss of use of property which has not been physically injured. You have PlayStation users who have $40 to $60 game discs who can't play them because of the defect. And so that gives you under the American Home Policy what? Yes, Your Honor. That gives us a duty to defend. That's all we have sought. That's all you want. Yes, Your Honor. And thank you for that clarification. Subject to reserving my 2 minutes and 20 seconds for the end, I will cede the podium. Good morning. I'm Tom Sloan. I represent American International Specialty Lines Insurance Company, commonly called ASLIC by the acronym. I'll spend about 10 minutes talking about negligent publication and then turn it over to Ms. Weinrich who will talk on behalf of American Home, which has an entirely different kind of policy. It is true that the term negligent publication is not defined in any dictionary, whether an English dictionary or a law dictionary. We found no cases which set forth what the definition is, yet the term has been used historically in the tort law. It is not a phrase that has never been used. It has never been used, however, to represent a tort of false advertising or negligent misrepresentation for a product. And indeed, this policy is not a policy which is a product liability policy or does it intend to ensure false representations in the sale of a product. Now, the California Supreme Court in the McKinnon v. Truck case says dictionaries are useful, but they do not yield a plain meaning if they disregard the policy context. Likewise, the Court of Appeals in the Mearpad case said that the function of the court in construing language in a policy is not to divine reasonable semantic meanings, but rather to divine what the parties intended in the context of the policy. Well, let me see if I can understand it. Are you essentially saying that the term, I'm trying to get the common, I hear the broads and the narrows and all of that, which doesn't have a lot of meaning to me. Are you suggesting actually that the phrase negligent representation in the context of this contract, and we have to look at it in the context of a contract that's been negotiated between fairly sophisticated people or entities, that it relates to misrepresentations about people rather than products? No. No. First of all, Your Honor, it gets very confusing with the language. The term in the policy is negligent publication. Publication, I'm sorry. Yes. And that term is used in the context of a group of wrongs called incitement, defective advice, and negligent publication. Now, if you look at the wrongful acts listed in the policy, they're A through G, seven categories, each of them consists of two or three words of related concepts. When you get to G, defective advice, incitement, or negligent publication, we find in the tort law that those words appear often together, often synonymously to refer to a type of tort where a publication incites conduct that leads to typically bodily harm, such as a how-to book that instructs how to do something, someone follows it, blows up in their face, that's a negligent publication. That's how it's historically been used. Now, the Ninth Circuit used the term negligent publication in the context of defamation, the Newcomb case. Other courts have used negligent publication also in the context of defamation. No case has ever used it in the term of, in the context of negligent misrepresentation or false advertising of a product. Now — What does it mean here? What were the parties trying to get at? Well, it's a phrase that you find in publisher's liability policies to protect them. If they publish a book or publish a magazine, someone does something and it leads to bodily harm, typically that's how it's been seen. It's a weird phrase, but it doesn't — it's not commonly used in the tort law because primarily the cases that have dealt with negligent publication say it's not a viable tort because of First Amendment rights. So most of the cases that use that phrase say, nice try, but it's constitutionally not a viable tort. I agree with you completely. This is a weird phrase. Now we're trying to figure out what it means. Why would ASLIC specifically exclude false advertising or misrepresentation in advertising if it wasn't covered in the first place? Well, it could be covered very easily, Your Honor, under the trademark infringement clause. And that's the one that comes to mind most easily. You run an advertisement and you infringe on someone's trademark. You make it look like you're selling their product and it's not theirs. A cause of action could be brought based on an advertisement which infringes on someone's trademark, and we do cover trademark infringement. But that wouldn't be false advertising. Well, if you falsely — it could be false, sure. If you infringe. But we also have an allegation here of false advertising, which seems to be excluded under P. Correct. Yes. So the trademark infringement cause of action under the Lanham Act would be covered. The cause of action alleging misrepresentation of false advertising out of the same wrongful advertisement would not be covered. However, that would be defended. I also want to point out that the case law makes very clear that you cannot look at an exclusion to determine, well, without this exclusion, there would be coverage. So it's possible to have an exclusion, for instance, in the Old Republic case, which excluded something which the Court found wasn't covered in the first place. And the courts say it's the wrong analysis to look at the exclusion to determine what's meant by the coverage provisions. I should also — Well, I have to say, Counsel, I understand sort of as a general proposition that — but it does strike me that it's funny that you would exclude something very specifically if it wasn't covered in the first place. If I'm looking at the exclusions and say, well, we're not going to cover X, then it raises an inference in my mind that you thought X was covered in the first place because that's why you specifically excluded it. Well, that's what the Old Republic court addresses and says you shouldn't do that. But what I'm saying, Your Honor, is I can understand the logic of that, but a — someone could, in an advertisement, infringe on someone else's trademark. And that is a covered — the trademark infringement itself is covered. Well, the bigger problem you've got, it seems to me, Counsel, is that following the exclusion in P of false advertising, misrepresentation advertising, is that you have agreed that you will defend suits alleging the foregoing conduct. Well, yes, but only if it's covered in the coverage provisions, because it's Hornbook law that the exclusion cannot create coverage. An exception in the exclusion cannot create coverage that doesn't exist in the coverage provisions to begin with. But why would you exclude it if it wasn't covered in the — accept it if it wasn't covered in the coverage? Well, as I said, Your Honor, there could be a trademark infringement claim which would be covered. I understand your trademark point. It then strikes me sort of odd that AISLIC wouldn't be very specific in its exclusion in P, arising out of false advertising or misrepresentation advertising in trademark, for example, or under section whatever the trademark section was, 2C. Well, I should say if they wanted to cover negligent misrepresentation or false advertising, which are common words, we all know what those mean, it would be in the list of covered wrongs. It's not. Negligent publication is an old-fashioned tort that, like incitement and defective advice, it was never intended to cover false advertising. And the — besides the exclusion in P, which we've talked about — Counsel, you said it was an old tort? Well, it's not — I thought we agreed that it was a weird phrase. It's a weird phrase. It's a weird phrase, and I don't mean to be — I wouldn't equate a weird phrase with an old tort. It doesn't affect Oliver Wendell Holmes. But it's — you can find it — you can find in the mid-century case law discussing torts called negligent publication, which are publications which lead someone to jump out a window thinking they can fly, based on the instructions. I would also say, Your Honor, looking at the context of the policy, it would be very weird if we wanted to cover representations when we've got a specific exclusion, J, which says we don't cover breach of warranties, representations, or guarantees. Now, that has to relate to a product. So we don't cover — we exclude representations as to products. So I think if you look at the context as a whole, it's clear the policy was not intended by either side to cover this type of tort. And I'm running into Ms. Weinreich's time. I apologize. Thank you. Good morning. I'm Rebecca Weinreich for American Home. My policy as a CGL policy and the way we evaluate whether there's any kind of defense duty is we start with the complaints, and according to the language of Hendrickson, we ask whether they can, quote, reasonably be construed, close quote, as alleging a covered loss. The Kim and Cain complaints are exclusively about malfunctions in the PlayStation 2. PlayStation 2 are completely excluded under your product exception. All of the allegations were that the PlayStation 2 wasn't working. And when I say all the allegations, I'm including in that comment the quotes that counsel offered you 30 minutes ago, that the specific allegations were, quote, inability to read discs, DVDs, CDs, and so forth. The entity, the thing that is unable to read is the PlayStation 2, which is not covered. Not only is there no allegation of damages to the discs or problem with the discs or inability of the discs to do anything, the underlying class actions specifically go out of their way to point out the discs are fine. There is no problem with the discs, notwithstanding Sony's, quote, grossly misleading disclosure statements. That's the language used in Cain at the excerpts of record 254, 255, or in Kim, that the class members may have, quote, erroneously attributed these problems not to their new PlayStation 2s, but to their CDs, DVDs, discs, et cetera, trying to clean those discs and so forth. That's at the excerpts of record 287. The underlying class actions go out of their way to say the discs are fine. The problem is the PlayStation 2. So when the complaint is tended to my client, it appropriately looks at the allegations in the complaint to determine whether they can be, quote, reasonably construed as alleging some kind of covered loss, and the answer is they cannot. And moreover, I might add that the class actions had all the standard allegations of class commonality. All of the proposed class members agreed we all have the same facts, the same damages, the same harm. We're alleging the same thing. That's why we ought to be a class action. The next step, of course, under Hurley and Gray, is you look at the complaints allegations, quote, read in connection with the insuring and exclusionary clauses in the policy. Close quote, the determinant of coverage is precluded. It's fairly straightforward. You have underlying complaints that say a product manufactured by your insured doesn't work. On its face, that's not covered. As far back as Gray v. Zerich, quote, we look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend, close quote. So there are two steps. You look at the allegations in the complaint, the nature of the claims, and you ask whether the policy covers it, and they don't. The loss of use issue that counsel alluded to, this idea that they couldn't use the game discs, I think he's – I think Sony is sort of agreeing, we all agree, that everything other than the specific Sony PlayStation 2 discs could be used anywhere. If you have a CD or a DVD and it doesn't work on the PlayStation 2, everybody has agreed you can go to your CD or your DVD player or your home computer and play it there. Counsel, should there be any different – should there be any different analysis if – if they're alleging loss of use of the PS2 discs, if you could go take it to another PS2 and play it? So if I can run next door and play it on Bobby's PS2 and his is working fine, mine's not. That's exactly what the underlying plaintiff said. I used my brother's, I used my father's. Unless Sony's allegation is not one single PlayStation 2 that they ever manufactured worth, which I don't think is their allegation, then you can play it somewhere else. The issue is can you play it somewhere else. Counsel's argument that, well, they paid $40 to buy one of these, and that somehow a measure of loss of use turns us on its head. It's only a measure of loss of use if what the consumers are going to do is go out and buy a lot more properly working discs. They have stacks of properly working discs. They don't need any more properly working discs. What they need is a PlayStation 2 to play them on. So the argument that, well, they spent $40 to buy something that works, so the measure of damage is, is they ought to have another $40 to buy another thing that works, which they also can't play anywhere because their PlayStation 2 doesn't work, is just circular. Sony isn't arguing, I don't think, that every PlayStation 2 they ever manufactured is defective and doesn't work. What they're saying is the ones purchased by the class members didn't work, and so what are they going to do with these discs? And it's exactly right. The answer is you go and play it somewhere else. Counsel, there's some claim in the record that some discs were getting – were coming out scratched. No, Your Honor, there is not. With all due respect, those allegations are not in the class. What happened there is after the complaints had been – I didn't say in the complaint. I just said that there were some things in the record that said that it's a defective disc. Yes, Your Honor, I imagine that there are allegations somewhere out in the world that a PlayStation 2 fell off a table and broke someone's toe and that someone complained to PlayStation 2 about it, to Sony about it, but it's not our Kim and Cain complaints. What was tendered to us was not a website of consumer complaints. What was tendered to us were two complaints, Kim and Cain. They're class actions. They have specific allegations. I take it if it was scratching other CDs or DVDs, it wouldn't be their property damage. Is that – I'm sorry. I thought the reason – you're insuring property damage, is that correct? Yes, Your Honor. So if it was somebody – would your policy cover property damage to something other – you know, CDs that were from somebody else? I see. Typically not. Yes, Your Honor, typically not. There is an exception to the exclusion, naturally, for what's called sudden accidental, and that's if your PlayStation 2 bursts into flames, for example. Something happens completely unexpectedly and – but I thought it was – okay. So I thought it was because it has to be Sony property. All Sony property is already excluded under Exclusion K. That's a Your product. Exclusion M goes on to exclude property damage to other – and to other people's property unless the thing bursts into flames. And to drop a footnote there, the issue of sudden accidental, there is no allegation in the record of anything remotely like sudden accidental. What it says is it clicks and it freezes, and if you turn it off and come back and play it again, it may work for a while, and then it will click and freeze again. Sudden accidental, bursting into flames, loose wires, smoke, the smell of burning electrical units, parts falling off it, those sorts of things are what we would consider sudden accidental. The fact that sometimes it clicks, sometimes it reads, sometimes it freezes, sometimes it doesn't, that's not sudden accidental. In fact, the underlying complaints point out that they may use this thing more than once, and sometimes it happens and sometimes it doesn't happen. So that doesn't – there isn't any coverage for the PlayStation 2. There isn't any coverage for the discs that Sony made specifically for the PlayStation 2, and there isn't any cover – coverage for potential damage to discs, and there isn't even an allegation on the last one. So to get back to the – to the loss of use question, the case of Hendrickson, Ellsworth, Anthem, all of those cases talk about a situation where a particular item is unusable for any purpose for some period of time. In Hendrickson, it was a field. Strawberry plants were planted. The strawberry plants did not yield. The – the allegation was the sellers of the strawberry plants said, well, just leave them there for a while and they will eventually return a crop for you. And so long as the farmers did that, their field was useless to them. So they lost the use of their field. Unlike in Hendrickson, here you push a button and the disc pops out. You go to your brother, to your neighbor, and you play it, and you're – and you're fine. Similarly, in Ellsworth, there is a built-in overhead grain conveyor system that will not deposit grain into a particular bin. You can't simply lift all that and plop it into another barn in a matter of a few seconds to make it work. It is completely unavailable. It is – there is a loss of use. Similarly, Anthem, when the – when the boards go into the scanners and they freeze, you have to take the time to repair them and so forth. We simply don't have that. We don't have any kind of temporal delay here. You push a button and the disc comes out and there's no loss of use because you can use it somewhere else. And again, to point out the issue about the scratches, it is important to remember that under Upperdeck and some of the other cases that looked at the scope of a class action, my client looks at the allegations in a particular action, not every consumer complaint ever lodged against Sony. Those are myriad, I'm sure, but they weren't tendered to us. What was tendered to us were these complaints, and the question is, were these complaints trigger coverage? So, other than that, are there any questions? Don't appear to be any. Thank you. Thank you, Your Honor. I'll try to be brief, Your Honors, and respond to just a couple of the major points. As to the weird phrase, negligent publication, as AISLIC stated in its papers, that is not a term that one finds in, for example, a general liability policy out there in extreme wide use. As AISLIC correctly noted, this is in a manuscript policy, which is a more specific policy used for, negotiated for a particular situation, so that the Court's construction of it here will have an impact, but perhaps not the same as it might for a general liability policy. Well, what in the context of your business is the exact thing that you were concerned with here with this phrase? Precisely what we got sued for in Kim and Cain, Your Honor, consumer fraud misrepresentation allegations. That is one of the types of things that this policy was purchased for. And a point of fact, Your Honor, Mr. Sloan attempted to say that, that we're clearer than this, weren't we? Your Honor, the policy has many specific wrongful act coverage provisions, and the one, the only one that we have before us is negligent publication. It has a lot of very specific different types of claims that are covered, but as I think Judge Bybee was pointing out, the false advertising and misrepresentation in advertising has to be subsumed under one of those many alleged wrongful acts in order to have an exclusion that takes it out of coverage. Mr. Sloan's point was, it is covered under something else, but it's been, it's covered under the trademark coverage, which would not be implicated here. Your Honor, trademark coverage is provided by a separate specific provision which covers, quote, infringement of, dot, dot, dot, trademark, end quote. That's wrongful act C. It's already covered somewhere else, Your Honor. That's the fallacy in that argument. Negligent publication to AZLIC's current reading could not cover anything. It would be an illusory provision, as would the defense provision. And one court, Your Honors, one thing that Mr. Sloan said with which we respectfully strongly disagree is, he said no court has applied the phrase negligent publication in the context of such false advertising or misrepresentation. The California Court of Appeal did. In People v. Superior Court, Forrest E. Olson, 157, Cal Reporter 628. Okay. Judge Schroeder, did you have a question? Is that cited in the briefs, or is that? That is cited, yes, Your Honor. All right. As to the American You're running over. Do you want to be very brief? Certainly, Your Honor. As to the American Home Policy, the general liability coverage for third party disks,  and go to a plate on a different PlayStation, assumes you've got a different PlayStation available. And my son, his best friend has an Xbox. So when if, in the unlikely event, his PlayStation made his disk unavailable, he has lost that use. Thank you. Thank you, Your Honors. The case just argued is submitted for decision. The Court appreciates the quality of the arguments presented.
judges: Schroeder, Hall, Bybee